IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  15-cv-00823-MJW

TYRONE WALKER,

Plaintiff,

v.

DAVID SCHERBARTH, In Individual and Official Capacities,
WESLEY WILSON, In Individual and Official Capacities,
FRANKIE NICKELS, In Individual and Official Capacities,
VIRGINIA PAGE, In Individual and Official Capacities,
FELICIA BROOKS, In Individual and Official Capacities,
JEAN PETERSON, In Individual and Official Capacities,
RAMONA PHIPPS, In Individual and Official Capacities,
BRIAN UHRICH, In Individual and Official Capacities,
ALLEN HARMS, In Individual and Official Capacities,
CURTIS DEINES, In Individual and Official Capacities,
D. HILLYER, In Individual and Official Capacities,
FITZGERALD, In Individual and Official Capacities,
HIGGINS, In Individual and Official Capacities,
KEVIN VORWALD, In Individual and Official Capacities, and
MARC BOLT, In Individual and Official Capacities,

Defendants.

---

## OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This is a prison-conditions case.  Plaintiff Tyrone Walker contends that

Defendants placed him on Restricted Privileges status for an extended duration in

retaliation for his lawsuits against the prison, thereby violating his constitutional rights.

The parties in this case have consented to magistrate jurisdiction under 28

U.S.C. § 636(c).  (Docket Nos. 10, 17, 26, & 27.)  Defendants move to dismiss under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Docket No. 23.)  Plaintiff filed a

2

response (Docket No. 30), and Defendants chose not to file a reply.  The Court has

reviewed the motion and response, taken judicial notice of the Court's entire file in this

case, and considered the applicable Federal Rules of Civil Procedure, statutes, and

case law.  Now being fully informed, the Court grants in part and denies in part

Defendants' motion.

## Plaintiff's Amended Complaint

Plaintiff's Amended Complaint (Docket No. 7) begins with the following factual

narrative:

> [In] August of 201[3], Plaintiff went to his case manager, Defendant
> Deines, concerning a potential scheduling conflict between Plaintiff's legal
> matters and his prison employment.

> During this time, Plaintiff was a pro se litigant, actively engaged in a
> number of cases.

> Plaintiff explained to Defendant Deines that he understood that
> state law required all prisoners to have a prison job and that he had no
> problem working.  Plaintiff went on to explain that he was a pro se litigant
> who was engaged in a number of cases and asked Deines to assign him
> to a job that would provide him as much time as possible to work on his
> legal work.  Defendant Deines agreed and assigned Plaintiff to a job as an
> O.C.A. (Offender Care Aide).

> Shortly thereafter, it became apparent to Defendant Deines, as well
> as a number of other staff members at Sterling Correction Facility (SCF),
> that Plaintiff was preparing a civil action against SCF and its staff.

> Defendant Deines then told Plaintiff that "it would not be a good
> idea" to use the time provided by the O.C.A. position, to file a lawsuit
> against SCF or any of its staff.  Despite this threat, Plaintiff continued to
> pursue his right of access.

> [On] September 9, 2013, Plaintiff was notified that Defendant
> Denies had began [sic] the process for having Plaintiff placed on R.P.
> (Restricted Privileges), and that this was being done because of Plaintiff's
> refusal to abandon his endeavor of accessing the court.

3

> [On] September 12, 2013, Plaintiff was called before SCF's
> Classification Committee. . . .
>
> The Classification Committee explained to Plaintiff that if he was
> going to pursue a civil action against SCF, than [sic] he will be doing so
> from R.P.  The Classification Committee then took a vote.  Defendants []
> all voted to place Plaintiff on R.P. because of his endeavor to access the
> court.

(Docket No. 7 ¶¶ 1–8).  Plaintiff's attempts to appeal his Restricted Privileges status

through the administrative grievance system did not succeed.  (*Id.* ¶¶ 14–18.)

On November 7, 2013; January 2, 2014; March 3, 2014; April 24, 2014; June 20,

2014; and July 14, 2014, prison officials reviewed and renewed Plaintiff's Restricted

Privileges status.  Plaintiff alleges that under ordinary circumstances Restricted

Privileges status is never renewed, and that each of these renewals was motivated by

retaliatory animus because Plaintiff refused to abandon his lawsuit against the prison.

(*Id.* ¶¶ 21–27, 33–38, 44–49, 55–60, 67–71, 76–80).  Specifically, Plaintiff alleges:

> Defendants [] committed Plaintiff to another term on R.P.  This was
> done in response to Plaintiff's explanation that he was still engaged in the
> endeavor of accessing the court.
>
> One thing to keep in mind while considering all claims in this
> Complaint: the Classification Committee assured Plaintiff that as long as
> he was pursuing a civil action against SCF, that he will be on R.P.  It is
> also important to know that the conditions of R.P. are deplorable,
> dehumanizing, humiliating, and outright foul.
>
> For this reason Plaintiff, knowing that he could be re-committed to
> R.P. if he chose to continue in the pursuit of his right of access,
> experienced a chilling effect when faced with the decision of whether or
> not to continue in his pursuit of accessing the court.

(*Id.* ¶¶ 23–25.)

When Plaintiff was placed on Restricted Privileges status, the prison seized the

personal items from Plaintiff's cell.  (*Id.* ¶ 29.)  Each time the prison renewed Plaintiff's

4

status, they also renewed the deprivation of personal items.  (*Id.* ¶¶ 40, 51, 62, 73, 82.)

Further, Plaintiff alleges that diet provided at SCF is inadequate and, because he could

not supplement it with purchased food when he was on Restricted Privileges status, the

status deprived him of an adequate diet.  (*Id.* ¶ 88.)  Similarly, inmates on Restricted

Privileges status are rushed through meals without sufficient time to eat (*id.* ¶¶ 93–94),

confined to their cells for 21 to 22 hours per day, and up to 85 hours on long weekends,

without showers (*id.* ¶ 95), assigned dangerous cellmates (*id.* ¶¶ 98–104), not allowed

sufficient clothing or blankets to stay warm (*id.* ¶¶ 105–107), and not allowed access to

adequate hygiene supplies (*id.* ¶¶ 113–119).

Plaintiff claims:

- That Defendants unlawfully retaliated against him for exercising his right to the courts, each time they placed him on Restricted Privileges status, in violation of the First Amendment;

- That each such incident deprived him of his personal property without sufficient hearing, in violation of the Fourteenth Amendment's Due Process clause;

- That the various restrictions imposed by Restricted Privileges status, when sustained for nearly a year, constitute cruel and unusual punishment in violation of the Eighth Amendment; and

- That the manner in which Defendants have imposed Restricted Privileges status on him violated his Equal Protection rights under the Fourteenth Amendment.

5

## Discussion

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As stated by then-Chief Judge Babcock in 2001:

> Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter. As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. Statutes conferring jurisdiction on federal courts are to be strictly construed. A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.

*Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091, 1094–95 (D. Colo. 2001) (internal citations, quotation marks, and alterations omitted).

The Tenth Circuit has recently explained the standards under Rule 12(b)(6):

> . . . To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. Disregarding conclusory statements, the remaining factual allegations must plausibly suggest the defendant is liable. A claim for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct. Such facts must raise a right to relief above the speculative level.

*McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (internal citations, quotation marks, and alterations omitted).

6

I.    **Sovereign Immunity**

Defendants first argue, under Rule 12(b)(1), that "all claims for monetary and declaratory relief against Defendants in their official capacities should be dismissed under the Eleventh Amendment."  (Docket No. 23, p.6.)  Plaintiff argues in response that he seeks no monetary damages from Defendants in their official capacities, and that the declaratory relief sought is ancillary to the injunction he seeks restoring his "Incentive" status and removing any mention of the "Restricted Privileges" status from his file.  (Docket No. 30, pp.5–6.)

Plaintiff misreads the rule allowing declaratory judgment as ancillary to prospective relief.  As explained in *Green v. Mansour*, 474 U.S. 64 (1985), declaratory forms of relief are available only when they are not "an independent form of relief."  *Id.* at 71 ("We simply held that the specific order fell within the *Ex parte Young* exception to the Eleventh Amendment principle of sovereign immunity because it was ancillary to a valid injunction previously granted and was sufficiently narrow to retain its character as a mere case-management device.  The notice . . . did nothing other than inform a diverse and partially victorious class concerning the extent of the judgment in its favor, . . . and that the federal courts could do no more for them.  There was no suggestion that the notice itself would bind state officials in any way, or that such notice would be routinely available as a form of relief in other cases.").  Plaintiff here has asked for declaratory relief as an independent remedy, addressed exclusively to wrongs that occurred in the past.  (Docket No. 7, pp.27–28.)  This is barred by the Eleventh Amendment.

7

It is therefore ORDERED that Defendants' motion to dismiss is granted, and Plaintiff's amended complaint is dismissed with prejudice under Fed. R. Civ. P. 12(b)(1), insofar as it seeks declaratory relief.

## II.   First Amendment Retaliation

Defendants argue that Plaintiff cannot state a claim for First Amendment retaliation, primarily because he fails to allege a non-speculative chilling effect caused by Defendants' conduct.  (Docket No. 23, pp.6–9.)  Plaintiff responds by arguing the conditions imposed by Restricted Privilege status allege a chilling effect.  (Docket No. 30, pp.6–12.)

To state a First Amendment retaliation claim a plaintiff must allege 1) that the plaintiff was engaged in constitutionally protected activity, 2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

Plaintiff has plausibly pleaded a chilling effect.  Plaintiff alleges that the Restricted Privileges status deprived him of access to commissary goods, of access to personal items of property, of access to educational and recreational opportunities, and of access to food other than the cafeteria food.  He further alleges that Restricted Privileges status confined him to his cell for upwards of 22 hours per day—longer on the weekends—and added a more dangerous class of cellmate that he would not otherwise

8

have been bunked with.  Although these conditions do not rise to the level of Cruel and

Unusual Punishment, *see infra*, there is no doubt that they would chill a person of

ordinary firmness from engaging in protected First Amendment activity.

Finally, Defendants make a brief, one-sentence argument that Plaintiff has not

alleged a retaliatory intent:

> In addition, Walker fails to allege that his restricted privilege status
> was the result of his protected activity, as opposed to his failure to perform
> his work related duties during work time.

(Docket No. 23, p.9.)  This argument bears no relationship to the Amended Complaint.

Defendants have argued that Plaintiff was disciplined for not performing the duties of his

job, but that fact is not alleged in the Amended Complaint.  Rather, the Amended

Complaint alleges that Plaintiff was explicitly and repeatedly told *by Defendants*

*themselves* that Plaintiff was being disciplined for pursuing his litigation—which is

sufficient factual content to plausibly allege retaliatory intent.

It is therefore ORDERED that Defendants' motion to dismiss is denied as to

Claims One through Four, Six, Eight, Ten, Twelve, and Fourteen.

**III.**   **Procedural Due Process**

Defendants argue that Plaintiff cannot state a claim for a Due Process violation

based on his items of personal property, because under Colorado law inmates do not

have a protected interest in such items.  (Docket No. 23, pp.9–12.)  Plaintiff responds by

arguing (1) that he has a property interest in his personal items and that Defendants did

not provide him with any hearing on the matter; and (2) that Defendants' conduct also

violates substantive due process.  (Docket No. 30, pp.13–16.)

9

Plaintiff's first argument has been specifically rejected by the Tenth Circuit, which held that the temporary denial of items of personal property under Colorado's applicable statute and prison regulation, for disciplinary purposes, does not give rise to a due process claim. *Griffin v. Hickenlooper*, 549 F. App'x 823, 826 (10th Cir. 2013) (relying on *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)); *see also Veile v. Martinson*, 258 F. 3d 1180, 1184–85 (10th Cir. 2001) (procedural due process protects property interests as determined under state law). Plaintiff's second argument fails because substantive due process does not provide additional protections where, as here, it would be duplicative of other constitutional claims in the lawsuit. *See Shimomura v. Carlson*, 17 F.Supp.3d 1120, 1129 (D.Colo.2014) ("'[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [ ] due process, must be the guide for analyzing these claims.'" (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))). Plaintiff's claim will rise and fall on his First Amendment theory, not substantive due process.

It is therefore ORDERED that Defendants' motion to dismiss is granted, and Plaintiff's amended complaint is dismissed without prejudice under Fed. R. Civ. P. 12(b)(6), as to Claims Five, Seven, Nine, Eleven, Thirteen, and Fifteen.

## IV.   Cruel & Unusual Punishment

Defendants argue that Plaintiff cannot state a claim for a Cruel and Unusual Punishment, because he fails to allege either sufficiently serious deprivations or deliberate indifference to his needs. (Docket No. 23, pp.12–18.) Plaintiff responds by

10

arguing the various deprivations, taken together, amount to conditions beneath society's evolving standards of decency.  (Docket No. 30, pp.17–22.)

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference to inmate health or safety.'"  *Reynolds v. Powell*, 370 F.3d 1028, 1031– 1032 (10th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The question of the defendant's culpability is subjective, but whether the condition complained of is sufficiently serious is evaluated on an objective basis.  *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).

As to the objective component, prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm.  *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  But "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).  In the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail."  *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (The objective component of a "conditions of confinement" claim requires that the objectionable conditions be sufficiently serious so as to "deprive inmates of the minimal civilized measure of life's necessities.").

11

Here, the conditions complained of are not sufficiently serious, even taken together, to amount to a constitutional violation. *See, e.g.*, *Trujillo v. Williams*, 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not establish a sufficient serious deprivation); *Smith v. Romer*, 107 F.3d 21, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (unpublished table opinion) (allegations of confinement for twenty-three hours per day, meals in cells, limited vocational, educational, and recreational services, exercise of one hour per day in cell, lights that did not turn off, and unsanitary shower stalls did not state a sufficiently serious deprivation for Eighth Amendment purposes). Plaintiff comes closest to describing deprivation of a basic human need when he describes the cold temperatures in his cell. But even then, he alleges that he has several layers of prison-issued clothing and a prison-issued blanket—thus establishing that he is not, in fact, deprived of some basic and decent level of warmth. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441–44 (10th Cir. 1996) (cruel and unusual punishment where prisoner left naked in 50-degree cell without clothing, blankets, or even mattress). As a result, Plaintiff has failed to plausibly allege the objective component of an Eighth Amendment claim.

Moreover, Plaintiff provides no allegations from which the Court could reasonably infer Defendants' deliberate indifference. The allegations, taken to be true, would establish that (1) Defendants intentionally renewed Plaintiff's Restricted Privileges status, and (2) Plaintiff suffered from various ailments (lack of sleep, bowel discomfort,

12

and so on) as a result.  But there is nothing in the Amended Complaint to suggest that Defendants had any notice that their conduct contributed to, or could be expected to contribute to, Plaintiff's maladies.  As a result, Plaintiff has also failed to plausibly allege the subjective component of an Eighth Amendment claim.

It is therefore ORDERED that Defendants' motion to dismiss is granted, and Plaintiff's amended complaint is dismissed without prejudice under Fed. R. Civ. P. 12(b)(6), as to Claim Sixteen.

## V.     Equal Protection

Defendants argue that Plaintiff cannot state a claim for an Equal Protection violation because he has alleged neither (1) that he is a member of a protected class, nor (2) that similarly situated individuals were treated differently.  (Docket No. 23, pp.18–21.)  Plaintiff concedes the point and asks that his Equal Protection claim be dismissed without prejudice.  (Docket No. 30, p.22.)

It is therefore ORDERED that Defendants' motion to dismiss is granted, and Plaintiff's amended complaint is dismissed without prejudice under Fed. R. Civ. P. 12(b)(6), as to Claim Seventeen.

## VI.     Qualified Immunity

Defendants further argue that, even if Plaintiff has plausibly alleged the elements of his claims, the rights at issue were not clearly established and Defendants are thus immune from suit.  (Docket No. 23, pp.21–23.)  Plaintiff disagrees.  (Docket No. 30, pp.22–25.)

13

Public employees acting in their individual capacities are presumed to be immune from liability. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990). Qualified immunity applies in "all but the most exceptional cases" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). To overcome a defendant's qualified immunity, the plaintiff must establish: (1) that defendants violated the plaintiff's federal constitutional or statutory right; and (2) that the right was clearly established at the time of the violation in the circumstances faced by defendants. *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

Here, the Court has already concluded that Plaintiff has satisfied the first prong as to his First Amendment retaliation claims but not as to any of his other claims. The only question, then, is whether Plaintiff's right to be free of retaliation for exercising his First Amendment rights was clearly established, in this context, by 2013. And there can be no doubt that it was. *See, e.g.*, *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (officials may not retaliate against prisoners for filing lawsuits against them); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (officials may not retaliate against prisoners for filing administrative grievances); *Rogers v. Garcia*, No. 08-CV-02821-WYD-MJW, 2010 WL 3547432, at *5 (D. Colo. Sept. 3, 2010) (concluding that right to be free from First Amendment retaliation was clearly established in the prison context). It may be the case that, when defined at a greater level of specificity—*i.e.*,

14

Plaintiff's right to be free of discipline for working on lawsuits while one is supposed to be at one's prison job—Plaintiff's right is not clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, ___ (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). But the facts as alleged in the Amended Complaint do not provide that context. Rather, they plausibly allege that Plaintiff was disciplined simply for working on a lawsuit. The Court concludes that Defendants' qualified-immunity defense cannot prevail at this stage.

In any event, qualified immunity applies "only against claims for monetary damages, and has no application to claims for declaratory or injunctive relief." *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004) (citing *Meiners v. University of Kansas*, 359 F.3d 1222, 1233 n. 3 (10th Cir.2004)). The Court concludes below that Plaintiff's claim for injunctive relief is not moot. As a result, Plaintiff's claims proceed regardless of the ultimate disposition of Defendants' qualified-immunity defense.

**VII.   Availability of Compensatory & Punitive Damages**

Defendants further argue Plaintiff has plausibly alleged neither a physical injury as required by 42 U.S.C. § 1997e(e) for compensatory damages, nor a sufficiently culpable state of mind by Defendants as needed for punitive damages. (Docket No. 23, pp.23–26.) Plaintiff argues in response that tangible injuries are not required for First Amendment retaliation claims, and that the facts alleged show a sufficiently culpable motive by Defendants. (Docket No. 30, pp.27–29.)

Plaintiff is incorrect as to compensatory damages. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, applies to First Amendment retaliation claims just as it

applies to any other claim.  *See, e.g.*, *Allen v. Reynolds*, 475 F. App'x 280 (10th Cir.

2012) (applying § 1997e(e)'s requirement of physical injury to First Amendment

retaliation claim).  "Appeals courts confronting the issue have held that although a de

minimis showing of physical injury does not satisfy the PLRA's physical injury

requirement, an injury need not be significant to satisfy the requirement." *Clifton v.*

*Eubank*, 418 F.Supp.2d 1243, 1245 (D. Colo. 2006).  Here, Plaintiff's plausibly alleged

injuries are no more than the physical manifestations of anxiety and other mental or

emotional injuries, which do not satisfy § 1997e.  *See, e.g.*, *Hughes v. Colo. Dep't of*

*Corrs.*, 594 F.Supp.2d 1226, 1238 (D. Colo. 2009) (finding physical manifestations of

depression and anxiety insufficient to satisfy physical injury requirement of § 1997e(e)).

As a result, compensatory damages are unavailable to Plaintiff.

That said, the PLRA does not bar recovery of punitive damages or nominal

damages.  *Searles v. Van Bebber*, 251 F.3d 869, 881 (10th Cir. 2001); *Perkins v.*

*Kansas Dep't of Corrs.*, 165 F.3d 803, 808 n.6 (10th Cir. 1999).  Given the clearly

established nature of Plaintiff's right to be free from retaliation, and given Plaintiff's

specific allegations of express and explicit statements of retaliatory intent by

Defendants, the Court finds it reasonable to infer the requisite state of mind to justify

punitive damages.  And at this stage of proceedings, the Court is required to draw such

inferences in Plaintiff's favor if it is at all reasonable to do so.

It is therefore ORDERED that Defendants' motion to dismiss is granted as to

Plaintiff's request for compensatory damages but denied as to Plaintiff's request for

punitive damages.

16

VIII.   **Mootness of Injunctive Relief**

Finally, Defendants argue that Plaintiff's request for injunctive relief is moot because he is no longer on Restricted Privileges status.  (Docket No. 23, pp.26–27.)  Plaintiff's Amended Complaint does not ask for an injunction removing him from Restricted Privileges status.  (*See* Docket No. 7, p.29.)  Defendants' argument fails.

**Order**

For the reasons set forth above, it is hereby ORDERED that Defendants' Motion to Dismiss (Docket No. 23) is GRANTED IN PART AND DENIED in part, as follows:

- Plaintiff's Amended Complaint (Docket No. 7) is dismissed with prejudice under Fed. R. Civ. P. 12(b)(1) insofar as it seeks declaratory relief, and without prejudice under Fed. R. Civ. P. 12(b)(6) insofar as it seeks compensatory damages;

- Plaintiff's amended complaint is dismissed without prejudice under Fed. R. Civ. P. 12(b)(6) as to Claims Five, Seven, Nine, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen; and

- Defendants' motion (Docket No. 23) is denied as to Claims One, Two, Three, Four, Six, Eight, Ten, Twelve, and Fourteen, and is further denied as to punitive damages and injunctive relief.

Dated this 29th day of September, 2015.

BY THE COURT:

*/s/ Michael J. Watanabe*
MICHAEL J. WATANABE
United States Magistrate Judge