IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-00823-MJW

TYRONE WALKER,

Plaintiff,

v.

DAVID SCHERBARTH, in his individual and official capacities,
WESLEY WILSON, in his individual and official capacities,
FRANKIE NICKELS, his in individual and official capacities,
VIRGINIA PAGE, in her individual and official capacities,
FELICIA BROOKS, in her individual and official capacities,
JEAN PETERSON, in her individual and official capacities,
RAMONA PHIPPS, in her individual and official capacities,
BRIAN ULRICH, in his individual and official capacities,
ALLEN HARMS, in his individual and official capacities,
CURTIS DEINES, in his individual and official capacities,
DIANA HILLYER, in her individual and official capacities,
LISA FITZGERALD, in her individual and official capacities,
RAYMOND HIGGINS, in his individual and official capacities,
KEVIN VORWALD, in his individual and official capacities, and
MARC BOLT, in his individual and official capacities.

Defendants.

---

## MOTION FOR SUMMARY JUDGMENT

Defendants, David Scherbarth, Wesley Wilson, Frankie Nickels, Virginia

Page, Felcia Brooks, Jean Peterson, Ramona Phipps, Brian Uhrich, Allen Harms,

Curtis Deines, Diana Hillyer, Lisa Fitzgerald, Raymond Higgins, Kevin Vorwald,[1]

and Marc Bolt (collectively "Defendants"), through the Colorado Attorney General,

---

[1] Defendant Vorwald remains on the case caption, however none of the remaining claims name Vorwald as a Defendant.

respectfully submit the following Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

This is a 42 U.S.C. § 1983 prison inmate civil rights case. Several claims remain against the Colorado Department of Corrections (CDOC) Defendants, all related to the same issue: Plaintiff's decision to file a grievance about water contamination in Sterling, Colorado. In his Amended Complaint, Plaintiff indicates that his placement on Restricted Privilege status was motivated by "his endeavor to access the court." Docket No. 7, Amended Complaint, ¶¶ 1-8. Plaintiff was placed on Restricted Privilege status, and over the course of approximately one year, he was reviewed for removal from Restricted Privilege status. *Id.* In his Amended Complaint Plaintiff alleged that his decision to pursue a lawsuit against the CDOC was what motivated his placement on Restricted Privilege status, and also what motivated Defendants' multiple decisions to keep Plaintiff on Restricted Privilege status. *Id.*, ¶¶ 21-27, 33-38, 44-49, 55-60, 67-71, 76-80.

At Plaintiff's deposition, Plaintiff clarified his allegations of retaliation. According to Plaintiff, he was retaliated against because he engaged in his right to file grievances about water contamination in Sterling. Plaintiff alleges his pursuit of the water grievances formed the basis for the lawsuit which was eventually filed against the CDOC, and his pursuit of the water issue was specifically why Defendants retaliated against him.

2

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).  "[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial. At that stage, if the defendant-official has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 118 S. Ct. 1584, 1598 (1998).

Qualified immunity shields government officials from liability where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Mata v. City of Farmingto*n, 791 F. Supp. 2d 1118, 1135 (D.N.M. 2011).  When a defendant asserts qualified immunity at summary judgment the responsibility shifts to the plaintiff to meet a "heavy two-part burden." *Id.*  The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity. *Id.*  In assessing whether the right was clearly established, the court asks whether the right was sufficiently clear that a reasonable officer in the defendant's shoes would understand that what he or she did violated that right.  *Id.*  It may be

appropriate, though not required, for the court to assess whether a constitutional violation has even been alleged before determining whether the constitutional right at issue was clearly established. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Only after the plaintiff satisfies both requirements of this two-part inquiry does the burden shift back "to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotations omitted). At this third step, a defendant has the burden of showing the violation was justifiable based on "extraordinary circumstances, such as reliance on the advice of counsel or on a statute" that may have "prevented (the official) from knowing that (her) actions were unconstitutional." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks omitted).

"The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." *Southway v. Cent. Bank of Nig.*, 149 F. Supp.2d, 1268, 1273-74 (D. Colo. 2001).

## UNDISPUTED FACTS

1.    Tyrone Walker is a CDOC offender who was transferred to Sterling Correctional Facility (SCF) on August 2, 2013. **Exhibit 1,** Offender Profile.

2.      Before his transfer to SCF in August of 2013, Walker was confined at Limon Correctional Facility (LCF).  **Exhibit 1.**  Before his transfer to SCF, Walker was working as an Offender Care Aide (OCA) in LCF "Living Unit 6".  **Exhibit 2**, Query Offender Programs; **Exhibit 3**, Affidavit of Tonya Whitney, p. 2; **Exhibit 4**, Deposition of Tyrone Walker, March 8, 2016, p. 9.

3.      After Walker was transferred to SCF, he was asked to work in Food Services.  **Exhibit 4**, pp. 13-14; **Exhibit 5**, Offender Chronlog Report, pp. 12-13. Walker was interviewed for a position in Food Services, asked to sign a work description for a position in Food Services, and told by CDOC staff he needed to go to Food Services.  **Exhibit 4**, pp. 13-14, 29-30, 54, 56-57; **Exhibit 5**, pp. 12-13.

4.      CDOC staff explained to Walker that his refusal to work in Food Services could cause him to be placed on Restricted Privilege status.  **Exhibit 4**, p. 54; **Exhibit 5**, p. 12.

5.      Walker did not sign his job description for Food Services.  **Exhibit 4**, pp. 29-30, 57, 85-86; **Exhibit 5**, pp. 12-13.

6.      Pursuant to CDOC Administrative Regulation (AR) 600-05, an inmate who refuses a work assignment is subject to Restricted Privileges status.  **Exhibit 6**, Administrative Regulation 600-05 (effective 11/01/11), pp. 1-3 §§ I, III(F), IV(A)(1).

7.      Walker explained to CDOC employees that he did not want to work in Food Services because he was concerned about not having enough time to work on his legal matters.  **Exhibit 4**, p. 35; **Exhibit 5**, p. 13.

8.      Walker explained to his Case Manager, Curtis Deines, that a position in Food Services required too much of a time commitment because of Walker's other legal work.  **Exhibit 4**, p. 35; **Exhibit 5**, p. 13.

9.      At the time of Walker's transfer to SCF, he was engaged in at least three legal cases.  **Exhibit 4**, pp. 18, 20.

10.      Walker was given at least two opportunities to accept a position in Food Services.  **Exhibit 4**, pp. 29, 56-57; **Exhibit 5**, pp. 12-13.  On one occasion, Walker was specifically told he was assigned to the kitchen.  **Exhibit 4**, p. 56.  On this same occasion Walker was asked to sign a Food Services work description, accepting placement in Food Services, but he refused.  **Exhibit 4**, pp. 56-57.

11.      Pursuant to CDOC AR 600-05 IV (A)(5)(a), Walker was referred to the Classification Committee for placement on Restricted Privileges on September 9, 2013. **Exhibit 5**, p. 12; **Exhibit 6,** p. 2, § IV(A)(5)(a).  **Exhibit 7**, Restricted Privileges Referral Form 600-05A, Dated 9/9/13. Walker was provided a Restricted Privileges Referral Form, which detailed the reason he was being referred to the Classification Committee for placement on Restricted Privilege status. **Exhibit 7**. Walker signed this form. **Exhibit 4**, p. 40; **Exhibit 7**.

12.      The Classification Committee met on September 12, 2013 and voted to place Walker on Restricted Privilege status. **Exhibit 8**, Classification Meetings, Dated 9/12/13.  Records from the Classification Committee indicate Walker was placed on Restricted Privilege status for refusing an assignment to Food Services. **Exhibit 8**.

13.     Walker remained on Restricted Privilege status for approximately eleven months. **Exhibit 2**.  Pursuant to policy at the time, an inmate on Restricted Privilege status is required to accept a facility assignment in order to transition out off of Restricted Privilege status. **Exhibit 6**, p. 4, § IV(C)(1).  Walker was reviewed multiple times for removal of Restricted Privilege status, but each time he was reviewed the CDOC determined he should remain on Restricted Privilege status. **Exhibit 9**, Reviews of Restricted Privilege Status, pp. 1-7.

14.     Walker was removed from Restricted Privilege status on August 22, 2014. **Exhibit 2**.

15.     At no time during his placement on Restricted Privilege status did Walker file a grievance indicating he was being retaliated against for his decision to complain, grieve, or file a lawsuit about water contamination.  **Exhibit 10**, affidavit of Anthony DeCesaro.

16.     The Administrative Regulation related to the grievance procedure specifically alerts offenders that retaliation for filing grievances is improper, and that any retaliation for engaging in the good faith use of the grievance procedure is itself grounds for filing a grievance.  **Exhibit 10**, **Attachment 1**, Administrative Regulation 850-04, p. 2, §IV(A)(3).

## SUMMARY OF ARGUMENT

Pursuant to the Prison Litigation Reform Act (PLRA), offenders are required to exhaust any available administrative remedies, in order to give administrators an opportunity to remedy allegations of unconstitutional conduct before a suit is

brought against them.  Walker did not allege in any grievances that he was being placed on Restricted Privilege status in violation of his right to be free from retaliation for exercising his right to the grievance process.  Walker did file multiple grievances while he was on Restricted Privilege status.  However, Walker never even intimated that his placement and retention on Restricted Privilege status was related to his grievances about water contamination.  He was required to exhaust his retaliation claims before suing CDOC on that basis.  Because he failed to exhaust his administrative remedies, each of his retaliation claims must be dismissed.

Alternatively, Walker's claims fail because his placement on Restricted Privilege status was required when he refused to work in Food Services.  Walker admits he refused to work in Food Services.  Walker was asked multiple times to work in Food Services and he refused each time.  Pursuant to Colorado Statute and administrative policy, the CDOC was required to take the very action Walker complains of.  The evidence does not support Walker's contention that he was placed on Restricted Privilege status because of his decision to grieve water contamination at SCF.  Nonetheless, regardless of Walker's decision to file grievances about water contamination, Walker's placement on Restricted Privilege status was required because of his refusal to work in Food Services.  Because Walker cannot establish that CDOC Defendants' alleged improper motive was the 'but for' cause of his placement on Restricted Privilege status, he fails to support a claim of

constitutional violation and Defendants are therefore entitled to qualified immunity.

## ARGUMENT

### I.   Plaintiff failed to exhaust available administrative remedies.

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law…until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion is required prior to filing an inmate suit.  *Jones v. Bock,* 127 S.Ct. 910 (2007).  "No unexhausted claim may be considered" in an inmate lawsuit.  *Id.*, at 923; *See also Aquilar-Avellaveda v. Terrell*, 478  F.3d 1223, 1225 (10th Cir. 2007). Thus, the PLRA makes exhaustion "mandatory" for all "inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 524,532 (2002); *see also, Booth v. Churner*, 532 U.S. 731 (2001).  Exhaustion is required even if the prisoner was confused with regard to the prison grievance system, and understood his claim to be non-grievable.  *Beaudry v. Corrections Corp. of America,* 331 F.3d 1164, 1167 (10th Cir. 2003).

"While a prisoner need not allege any particular legal theory, his grievance must be particular enough as to 'provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.'" *Toevs v. Milyard*, 563 F. App'x 640, 644 (10th Cir. 2014) *quoting Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).  "Requiring exhaustion allows prison

officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 127 S. Ct. at 914.

In order to properly exhaust administrative remedies, prisoners must complete the administrative grievance procedure in accordance with applicable procedural rules, which are not defined by the PLRA, but by the prison grievance procedure itself. *See Woodford v. Ngo*, 584 U.S. 81, 93 (2006); *Jones*, 127 S. Ct. at 922-23.

The express terms of the CDOC Administrative Regulation relating to grievances states:

> Offenders shall file Step 1, Step 2, and Step 3 grievances (Attachment "A") with their case manager/CPO, or other DOC employees designated by the administrative head, who shall forward the grievance to the facility grievance coordinator for processing.

*See* **Exhibit 10, Attachment 1**, Administrative Regulation 850-04, p. 3, § IV(C)(5). The CDOC requires an inmate to file a grievance no later than thirty (30) calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance. **Exhibit 10, Attachment 1**, p. 8, § IV(F)(1)(a). Under this regulation, an offender with a complaint that cannot be resolved through discussion or dialogue must follow the formal grievance procedure, consisting of Steps 1, 2, and 3. **Exhibit 10, Attachment 1**, p. 3, § IV(C)(5).

Walker failed to alert the CDOC that he felt he was being retaliated against because of his decision to file grievances. *See* Attached **Exhibit 10**, affidavit of Anthony DeCesaro. To properly exhaust his claim for retaliation Walker was required to file a step 1 grievance, a step 2 grievance, and a step 3 grievance.

10

**Exhibit 10, Attachment 1**, p. 3, § IV(C)(5).  Walker specifically grieved other complaints he had related to his placement on Restricted Privilege status, but he never mentioned that he felt his placement on Restricted Privilege status was due to a retaliatory motive.  **Exhibit 10.**  The only grievance which alleges retaliation is related to Walker's complaint that the prison indicated it may restrict his ability to file grievances if he files too many frivolous grievances, and this grievance was not pursued to Step 3.  **Exhibit 10, p. 2.**

Walker specifically raised his concern that he was not being given a meaningful response to his grievances.  **Exhibit 10, Attachment 4**.  He grieved that his First Amendment right to file grievances was being denied by the facility without adequate review.  **Exhibit 10, Attachment 4**.  He also complained that his placement on Restricted Privilege status was in violation of his right to Due Process for lack of a sufficient hearing.  **Exhibit 10, Attachment 2**.  He also separately alleges his placement is in violation of the Equal Protection clause.  **Exhibit 10, Attachment 3**.  The multitude of Walker's grievances demonstrates that he was aware of his need to file grievances with respect to each alleged violation and that he was aware of the CDOC's procedures for filing grievances.

Administrative Regulation 850-04 specifically indicates: "Reprisals for the good faith use of or participation in the grievance procedure are prohibited. An offender shall be entitled to file a grievance alleging that such a reprisal occurred." **Exhibit 10, Attachment 1**, p. 2, § IV(A)(3).  Walker did not file any grievances alleging he was being punished, or otherwise suffering reprisal, for his decision to

file grievances about contamination of Sterling water. **Exhibit 10**. Now, after having seen his case evolve through pleadings, motions, and court orders, Walker specifically claims that his decision to grieve the water issue is what caused CDOC Defendants to place him on Restricted Privilege status.

Walker claims that his concerns about water contamination became an issue for the facility. *See* **Exhibit 4**, pp. 6-8, 60-61. "Well, I started filing the grievances, and the grievances is what became the issue." **Exhibit 4**, p. 8. He goes on to say, "it got weird. They were pressing me about the issue and Medical. And it was becoming – and it was apparent that this – the fact that I was pursuing this was an issue." **Exhibit 4**, pp. 60-61. Walker claims Defendants' odd behavior was apparent at the first review of his Restricted Privilege status, which occurred in November 2013. **Exhibit 4**, pp. 60-61. Based on Walker's deposition testimony, he should have been aware of the alleged retaliatory events at least as early as November of 2013, and his first grievance was thus required 30 days after that discovery.

Walker claims that each time he was reviewed for Restricted Privilege status, the acts of the committee in keeping Walker on Restricted Privilege status constituted an additional, separate act of retaliation. *See* ECF Doc. 7, **Amended Complaint**. Thus, Walker alleges eight different acts of retaliation in violation of his First Amendment right to grieve conditions within the Sterling Correctional Facility. ECF Doc. 7, **Amended Complaint**. In order to exhaust his administrative remedies, Walker was required to pursue grievances pertaining to

this alleged retaliation through the third step. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."; *see also Jones,* 127 S. Ct. at 925-26 (claims must be taken individually, and any unexhausted claims should be dismissed while exhausted claims may proceed); *Porter v. Nussle*, 122 S. Ct. 983, 992 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes").  Walker did not file a single grievance alleging retaliation for his pursuit of the water contamination issue. **Exhibit 10**.

Walker cannot dispute that he failed to grieve his claims of retaliation.  Even if Walker asserts that he verbally complained of retaliation to prison staff, he failed to exhaust his claims.  "[E]ven if informal complaints put the prison officials on notice of [a] grievance in a substantive sense, . . . to satisfy the PLRA a prisoner must also procedurally exhaust his available administrative remedies." *Anderson v. Spizziota*, No. 11-5663 (SJF) (SIL), 2016 U.S. Dist. LEXIS 18600, at *76 (E.D.N.Y. Feb. 12, 2016).

The CDOC maintains records of all grievances for a 3-year period. Defendants have searched all of Walker's grievances filed between August 2013 to September 2014 and have found no grievances alleging Walker's placement on Restricted Privilege status was related in any way to his water contamination grievances. **Exhibit 10**.  The affidavit provided by Anthony DeCesaro is sufficient

for the Court to determine Walker failed to exhaust his retaliation claims prior to filing suit. *See Curry v. Mazzuca*, 2006 U.S. Dist. LEXIS 4007, at *21-23 (S.D.N.Y. Feb. 1, 2006) (barring claims under PLRA exhaustion where the defendants produced evidence that a search of records did not locate any documents which would apply to the exhaustion issue, and the plaintiff did not produce a copy of a grievance that would have put the defendants on notice of his particular claim). Accordingly, each of Walker's remaining claims must be dismissed for failure to exhaust administrative remedies. *Jones*, 127 S. Ct. at 918-19 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.")

## II. Alternatively, Plaintiff cannot demonstrate a genuine question of material fact with regard to the basis for his placement in Restricted Privileges and thus, Defendants are entitled to judgment as a matter of law.

"Courts must approach prisoner claims of retaliation with skepticism and particular car" because such claims are "easily fabricated" and "because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim, a plaintiff must allege: (i) the plaintiff was engaged in a constitutionally protected activity; (ii) the defendants' actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from

continuing to engage in that activity; and (iii) the defendants were substantially motivated by plaintiff's involvement in the constitutionally protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

As to the first and second prongs and for the purpose of this motion, Defendants concede that Walker's pursuit of grievances and a lawsuit about water contamination is constitutionally protected activity, but maintain that Defendants did not take actions intended to directly impact or injure this activity. Walker was required to accept the facility directed job assignment. The fact that an assignment to Food Services required time which he would have preferred to use working on his lawsuit is not an infringement of his constitutionally protected right. Walker still had the right to file grievances and work on the water contamination lawsuit. Furthermore, as it was explained to Walker, his Food Services assignment would have ended 10:30 a.m. each workday, with Tuesday, Wednesday, and Thursday off each week, giving him plenty of time to work on any legal matters he was engaged in. **Exhibit 5**, p. 13.

"The third prong requires the plaintiff to allege specific facts that, if credited, establish that but for the defendant's improper retaliatory motive the incidents to which he refers, including the disciplinary action, would not have taken place"). *Allen v. Avance*, 491 Fed. Appx. 1, 6 (10th Cir. 2012). To satisfy the "but for" requirement, an inmate must show that there was no legitimate penological reason for the prison's action. *Pratt v. Rowland*, 65 F.3d 802, 808-10 (9th Cir. 1995). *See also Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (ordering trial court to

determine on remand whether the facility had a legitimate interest justifying the alleged retaliatory transfer of the plaintiff).

"In addition, a single constitutional reason for the prison's action, such as preserving institutional order and discipline, is sufficient to defeat the inmate's retaliation claim." *Turner v. Falk*, Civil Action No. 13-cv-02957-PAB-MJW, 2014 U.S. Dist. LEXIS 178817, at *11 (D. Colo. July 8, 2014) (citing *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (summary judgment upheld because there was some evidence to uphold disciplinary action and reclassification, and those acts served the legitimate penological interest in maintaining prison discipline).

Here, Walker cannot prove the third prong of a retaliation claim because Defendants' actions were based on legitimate statutory and policy requirements and not a result of any protected activity on the part of Walker. Walker was allowed to pursue his grievances and legal matters, but he was also expected to perform his facility assigned job.

**A. The action of Defendants in placing and maintaining Plaintiff on Restricted Privilege status was required and justified by policy and not intended to infringe on any protected activity.**

Walker acknowledges he was asked to work in Food Services multiple times when he arrived to SCF in August of 2013. **Exhibit 4**, pp. 13-14, 29-30, 54, 56-57. He also acknowledges that he refused to work in Food Services. **Exhibit 4**, pp. 29-30, 57, 85-86. Walker contends that he was not allowed to work in Food Services, pursuant to policy, because he had obtained a position as an Offender Care Aide (OCA) shortly after arriving at SCF. **Exhibit 4**, p. 85. This claim is not supported by Walker's records. Walker had been an OCA when he was in Limon Correctional Facility, immediately prior to his transfer to SCF. **Exhibit 3**, p. 2; **Exhibit 2**. Walker was unassigned because of his arrival to SCF in August of 2013, assigned to Food Services in September of 2013, and placed on Restricted Privileges status in September of 2013. **Exhibit 2**; **Exhibit 3**, p. 2; **Exhibit 11**, Affidavit of Curtis Deines, p. 2-3. Walker was never assigned as an OCA in August or September of 2013, except for the one day he spent as an OCA in Limon before his transfer to SCF on August 2, 2013. **Exhibit 3**, p. 2.

Walker acknowledges he was asked to sign a job description for work in Food Services on two occasions. **Exhibit 4**, pp. 13-14, 29-30, 54, 56-57. Walker's records support this fact, and indicate that Walker was not placed on Restricted Privilege status until after he refused to sign his job description on at least two occasions. The problem with Walker's position lies with his assertion that he was justified in refusing the assignment to Food Services because he was already assigned as an

OCA.  This contention is problematic for two reasons.  First, there is no evidence in the record that Walker was an OCA in Sterling in August or September of 2013. Second, Walker had a conversation with Abigail Stangl in December of 2012, while still in Limon, where Ms. Stangl explained to Walker that he could be assigned to Food Services without his consent. **Exhibit 5**, p. 15, entry dated 12/13/2012.

Walker was assigned to Food Services and he refused to work in Food Services.  The records from August 2013 to August 2014 indicate Walker was refusing to work in Food Services because he felt that a position in the kitchen would not have allowed him enough time to work on his legal matters.  **Exhibit 5**, pp. 12-13; **Exhibit 7**; **Exhibit 8**; **Exhibit 12**, Restricted Privileges Appeal Form, pp. 1-2.  Walker's deposition testimony supports these records by acknowledging he was engaged in multiple legal matters and had communicated his concerns about not having enough time to work on those matters if he was assigned to the kitchen, or Food Services.  **Exhibit 4**, pp. 31, 35, 37.

On September 9, 2013 Walker was presented with a Referral Form, which is what a case manager must fill out if an offender refuses work or is terminated from work.  **Exhibit 5**, p. 12; **Exhibit 6**; **Exhibit 11**, p. 4.  The Referral Form specifically lists the reason Walker was referred for placement on Restricted Privileges status; "On 8-16-13, Offender Walker refused to sign his job description for food service stating that he wouldn't have enough time to work on his legal work if he worked in food service.  On 9-6-2013, he refused to sign his job description again."  **Exhibit 6**. Walker acknowledges he received this form with the explanation and that he signed

the form.  **Exhibit 4**, pp. 51-52 ("So that – yeah, so I ended up signing but they filled in [the handwritten part] after I signed").

Walker then filed an appeal form.  **Exhibit 12**, p. 2.  Walker explains in his appeal form that he was placed on Restricted Privilege status because he chose to pursue his right to access the courts.  **Exhibit 12**.  In his explanation, Walker does not assert his placement was because he chose to grieve the water contamination issue.  Rather, he states: "I explained at the R.P. hearing [relating to placement on Restricted Privilege status] that I was overwhelmed by legal and could not possibly meet the demands of my legal matters and work in the kitchen at the same time." **Exhibit 12**, p. 2.  Walker goes on to explain that he feels he should not be punished, because "the law requires D.O.C. to provide prisoners with what is needed to access the court and what I need is time."  **Exhibit 12**, p. 2.

Walker seems to have been under the impression that his legal matters somehow insulated him from being placed in Food Services, and that his legal matters further insulated him from being placed on Restricted Privilege status, despite his obvious refusal to accept his facility assignment.  *See* **Exhibit 12**; **Exhibit 5**, pp. 12-13.  Colorado law provides that the CDOC "shall deny specific privileges" to any prisoner who is required and able to work, but does not perform the work. Colo. R. Stat. § 17-20-114.5.  Pursuant to policy, a case manager "shall initiate a Restricted Privileges (RP) status review" when an offender refuses to participate in, or is terminated from a CDOC work program.  **Exhibit 6**, p. 2, § IV(A)(2).

Walker cannot dispute that he refused to work in Food Services when he was asked to.  Walker was placed on Restricted Privilege status because both statutory law and CDOC policy required it when Walker refused to accept a position with Food Services.  Because the CDOC was acting pursuant to legitimate penological interests in restricting Walker's privileges after he refused to work, Walker cannot prevail on a retaliation claim.  No reasonable jury could find that, but for CDOC's alleged motive to retaliate against Walker for his water grievances or his legal activity, Walker would not have been on Restricted Privilege status.

### B. Walker's grievances about water contamination arose after he had already refused his assignment to Food Services.

Walker cannot prove his placement on Restricted Privilege status was motivated by his decision to grieve water contamination issues, because the event which predicated his placement on Restricted Privilege status occurred *before* he started the grievance process related to water contamination.  On August 16, 2013 Alicia Emrick specifically documented Walker's refusal to sign a job description for Food Services.  **Exhibit 5**, p. 13.  Walker then invokes the informal grievance process, documented by Curtis Deines on August 26, 2013, where Walker confirms that he refused to sign his job description and claims "Ms. Emrick is punishing him by not allowing him enough time to complete his legal work."  **Exhibit 5**, p. 13.  The act of refusing on August 16, 2013 was sufficient to refer and place Walker on Restricted Privilege status.  However, the facility gave Walker two more opportunities to accept his assignment to Food Services before he was ultimately placed on Restricted Privilege status.  **Exhibit 5**, p. 12 ("Inmate walker refused to

20

sign job discription [sic] for the second time. He was also asked to sign on 8/27/13. He will be RFP Pending").

Walker refused his assignment on at least three occasions, two of which were specifically documented by separate CDOC personnel. **Exhibit 12**, pp. 12-13. Additionally, Walker had a conversation with his Case Manager, Curtis Deines, wherein Deines noted Walker was considering getting a Code of Penal Discipline (COPD) write-up for refusal to work so that he would be placed on Close Custody status. **Exhibit 5**, p. 12; **Exhibit 11**, p. 4. Walker made this statement to Deines on September 5, 2013, one day before he refused his assignment to Food Services for a third time. **Exhibit 5**, p.12; **Exhibit 11**, p. 4.

The only evidence in support of Walker's claim that he was placed on Restricted Privilege status because of his water grievances are Walker's own self-serving statements. But his recent self-serving statements are negated by his conduct and his statements at the time of his placement on Restricted Privilege status. Walker signed the form that specifically explained to him he was being placed on Restricted Privilege status because he refused to work in Food Services. **Exhibit 7**. And his appeal form mentions nothing about water contamination, retaliation, or punishment for grieving the water issue. **Exhibit 12**. Walker's appeal form actually supports CDOC's documentation of conversations with Walker which indicates Walker felt he would not have enough time to work on his legal matters if he was assigned to Food Services. *See* **Exhibit 12**, p. 2 ("I explained at

the R.P. hearing that I was overwhelmed by legal and could not possibly meet the demands of my legal matters and work in the kitchen at the same time").

Over the next several months Walker grieved numerous issues related to the conditions of his confinement, but never mentions feeling like he was retaliated against for grieving water contamination at SCF. **Exhibit 10**, pp. 5-6. Whether he deliberately decided not to grieve the retaliation which he now claims was obvious to him, or he failed to perceive the alleged retaliation altogether, Walker's inaction supports CDOC records which show Walker's placement on Restricted Privilege status had no relation to his grievances about water contamination. Walker was not retaliated against because of his decision to grieve water contamination at SCF; he was placed on Restricted Privilege status because he refused his assignment to Food Services. **Exhibit 5**, pp. 12-13; **Exhibit 7**, **Exhibit 8**, **Exhibit 11**, pp. 4-5, **Exhibit 12**, p. 2; **Exhibit 13**, Affidavit of Allen Harms, p. 3 ("The only reason for placement in Restricted Privileges discussed by the Classification Committee was Mr. Walker's refusal to accept a work assignment.").

### C. Defendants had no motive to retaliate against Walker.

Walker claims everything changed when he started the grievance process related to water contamination. The problem with Walker's claim is that SCF specifically alerted offenders to the water contamination issue. When Walker first brought up water contamination in his informal grievance, on August 26, 2013, he was not grieving an issue that CDOC intended to keep under some shroud of secrecy. In fact, the Executive Director, Rick Raemisch, issued a memo to the entire

facility on August 22, 2013.  **Exhibit 14**, Sterling Water Memo, Distributed August 22, 2013.  In this memo, Mr. Raemisch explains the water contamination issue, outlines the solution to the problem, and encourages offenders to inform each other of the information contained within the memo.  **Exhibit 14**.

The CDOC was not trying to keep the issue of water contamination quiet. Walker explains that facility staff was acting unusual when he approached them with his complaints about the water.  **Exhibit 4**, p. 7.  He specifically states that employees "passed me around, instead of allowing me to file the grievances." **Exhibit 4**, p. 7.  Walker approached Curtis Deines on August 26, 2013, and Mr. Deines accepted several informal grievances from Walker, documenting Walker's complaints in his Chronological Record.  **Exhibit 5**, p. 13 ("He was given a grievance because he is grieving the contaminated drinking water in Sterling. He was told that he would receive a general letter as a response to his grievance issue.").  Walker then received a written response from Warden James Falk, which was the "official response for all grievances related to the drinking water at this facility."  **Exhibit 15**, Response to grievances regarding SCF drinking water, dated August 28, 2013.  Walker received a prompt response to his informal grievance two days after he spoke with Deines.  Also, the facility responded with an official memo, suggesting the facility was already anticipating grievances on the very issue of water contamination.  The official response acknowledges that Uranium levels were one thousandth mg/L above the allowable levels and explained that alternative water was available at every meal.  **Exhibit 15**, p. 1.  The CDOC's initial handling

of Walker's grievance indicates the facility was actually quite receptive to Walker's grievance.

It makes no sense that CDOC would retaliate against Walker for grieving water contamination on the one hand, and specifically take ownership of the water contamination issue on the other hand. Furthermore, the levels of Uranium in Sterling City water were not attributable to CDOC. This was a municipal problem that CDOC recognized as having an affect on its inmates, and CDOC offered the specific solution of providing offenders with an alternate source of water from Cañon City. **Exhibit 14**, **Exhibit 15**. There was simply no motive for CDOC to retaliate against Walker for grieving water contamination.

### D. Defendants are entitled to qualified immunity.

A public official acting in his individual capacity is presumed to be immune, *Schalk v. Gallemore,* 906 F. 2d 491, 499 (10th Cir. 1990), and is entitled to qualified immunity in all but the most exceptional cases. *Tonkovich v. Kansas Board of Regents,* 159 F. 3d 504, 516 (10th Cir. 1998)

To overcome qualified immunity, Walker must first allege sufficient facts showing he suffered a constitutional violation because of the actions of Defendants. *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005). Defendants have produced multiple documents from Walker's inmate file, and other records kept by the CDOC, indicating Walker was placed on Restricted Privilege status for a legitimate penological purpose. Walker cannot dispute that he refused to work in Food Services. Walker's claim that he was placed on Restricted Privilege status because

of his grievances related to water contamination is unsubstantiated.  However, even if Walker was able to produce supporting evidence for his contention, the record shows that pursuant to Colorado statute and CDOC policy, Walker was required to be placed on Restricted Privilege status because of his refusal to work in Food Services.  Walker can neither substantiate his claim of retaliation, nor show that but for the alleged retaliatory motive of CDOC Defendants Walker would not have been placed on Restricted Privilege status.

Walker therefore cannot demonstrate a contested material fact as to the motivation for his placement on Restricted Privilege status.  Because Walker's allegations, assumed to be true and taken in the light most favorable to him, fail to establish that Defendants would not have placed him on Restricted Privilege status but-for their alleged motivation to retaliate against him for filing grievances, CDOC Defendants are entitled to qualified immunity and the court must dismiss the retaliation claims against them.

## CONCLUSION

Walker failed to exhaust the required administrative remedies alleging that his placement on Restricted Privilege status was due to a retaliatory motive.  The disclosures, discovery and affidavits reveal that no reasonable jury could return a verdict in Walker's favor because his placement on Restricted Privilege status was not related to his work on a lawsuit, but rather required when he, by his own admission, refused to work in Food Services.  The Court need not weigh the evidence to determine Walker has failed to raise a material issue of fact.  His self-

serving testimony regarding placement on Restricted Privilege status because of his water contamination grievance is negated by his own conduct and the evidence. Walker cannot establish a constitutional violation as required to overcome qualified immunity.  Defendants are thus entitled to judgment as a matter of law.

Respectfully submitted this 22nd day of April, 2016.

CYNTHIA H. COFFMAN
Attorney General

s/ John A. VanLandschoot
JOHN A. VANLANDSCHOOT
Assistant Attorney General
Corrections Unit
Civil Litigation & Employment Law Section
Attorneys for CDOC Defendants

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  (720) 508-6623
FAX:  (720) 508-6032
E-Mail: john.vanlandschoot@coag.gov
*Counsel of Record

**CERTIFICATE OF SERVICE**

I certify that I have duly served the within Motion upon all parties herein with

the Clerk of Court using the CM/ECF system and/or depositing copies of same in the

United States mail, postage prepaid, at Denver, Colorado, this 22nd day of April, 2016

addressed as follows:

Mr. Tyrone Walker, #97763               *Courtesy Copy*:
Sterling Correctional Facility          Adrienne Jacobson, CDOC
P.O. Box 6000
Sterling, CO 80751

<u>s/ Elle Di Muro</u>